# Exhibit C

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY
PRESENT: HON. MARYLIN G. DIAMOND               PART 48
                    *Justice*

---

Matter of NEW YORK CIVIL LIBERTIES UNION,           INDEX NO. 112145/08

                 Petitioner,                       MOTION DATE

For a Judgment pursuant to Article 78 of
The Civil Practice Law and Rules,                   MOTION SEQ. NO. 001

                -against-                       MOTION CAL. NO.

NEW YORK CITY POLICE DEPARTMENT
and RAYMOND KELLY, in his official capacity as
Commissioner of the New York City Police
Department,

                 Respondents.

---

Cross-Motion:  [ ] Yes   [X] No

Upon the foregoing papers, it is ordered that: In this article 78 proceeding, the petitioner seeks review of the denial by the respondents New York City Police Department ("NYPD") and Raymond Kelly, as the NYPD Commissioner, of its request, made under the Freedom of Information Law ("FOIL") (Public Officers Law, article 6) for documents relating to New York City's plan to implement a system known as the Lower Manhattan Security Initiative ("LMSI") which is designed to prevent and defend against future terrorist activity in lower Manhattan.

As reported in the New York Times in July, 2007 and as confirmed on various occasions by NYPD and city officials, the LMSI is modeled after a security system used in London known as the "Ring of Steel" and is intended to cover the area in Manhattan south of Canal Street. It would use thousands of government and private cameras to capture vehicle license plates, suspicious behavior and the faces of pedestrians using facial recognition technology, all of which would be fed into a central database maintained at an NYPD command center where the information would be immediately analyzed to determine whether any security threat was imminent or whether there was any suspicious pattern in the movement of persons and vehicles. According to these accounts, the NYPD had obtained $25 million from the federal government and $10 million from the City to pay for the system.

Based on these accounts, by letter dated October 5, 2007, the petitioner New York Civil Liberties Union ("NYCLU") submitted a FOIL request to the NYPD for 8 categories of documents: (1) documents sent by the City or the NYPD to the United States Department of Homeland Security ("DHS") concerning the LMSI, (2) documents received by the City or the NYPD from DHS concerning the LMSI, (3) documents sent by the City or the NYPD to the New York City Council concerning the LMSI, (4) documents received by the City or the NYPD from the City Council concerning the LMSI, (5) documents concerning the LMSI sent by the City or the NYPD to other entities, such as potential vendors of goods or services to be used in the system, (6) documents concerning the LMSI received by the City or the NYPD from other entities, such as potential vendors, (7) documents in NYPD's possession or control not covered by any of the above-categories which assess or discuss the LMSI and (8) documents in NYPD's possession or control which assess or discuss London's Ring of Steel system. As to the first four categories, the petitioner specified that its request sought, but was not limited to, documents showing (1) the types of information to be collected,

law enforcement agencies or other entities, (4) the form in which the information will be retained and (5) how long the information will be retained before it is destroyed.

On April 7, 2008, the NYPD responded to the request by disclosing one document from the Manhattan Borough President to the NYPD Commissioner but otherwise advising that all of the documents sought were either exempt from disclosure or could not be located. Following the petitioner's administrative appeal of this decision, the NYPD, in a letter from its Records Access Appeals Officer dated May 8, 2008, produced additional documents totaling 88 pages. One of the documents was a letter from the NYPD Commissioner to the City Council in conjunction with a budget hearing for fiscal year 2009. Two other documents, from which information had been redacted, were LMSI funding requests by the NYPD to the DHS for fiscal years 2006 and 2007. In addition, the NYPD produced redacted budgetary worksheets regarding DHS security grants and various faxes and emails which the NYPD received from vendors of security surveillance equipment. As to the petitioner's request for documents received by the NYPD from the City Council or sent by the NYPD to outside entities such as vendors, the Access Officer stated that no responsive records were found. As to the balance of the petitioner's request, the Access officer concluded that they were exempt from disclosure under (1) Public Officers Law § 87(2)(a), which exempts from disclosure records whose disclosure is otherwise barred by state or federal statute; (2) Public Officers Law § 87(2)(e)(i) and (e)(iv), which, respectively, exempt from disclosure records which are compiled for law enforcement purposes and which, if disclosed, would interfere with law enforcement investigations or judicial proceedings, or reveal criminal investigative techniques or procedures, except routine techniques and procedures; (3) Public Officers Law § 87(2)(f), which exempts from disclosure records whose disclosure could endanger the life or safety of a person; (4) Public Officers Law § 97(2)(g), which exempts from disclosure inter-agency and intra-agency communications which are pre-decisional and deliberative and (5) Public Officers Law § 87(2)(i), which exempts from disclosure records which, if disclosed, would jeopardize an agency's capacity to guarantee the security of its information technology assets, such assets encompassing both electronic information systems and infrastructures. The NYPD has indicated that the documents being withheld, which include 1,696 email messages, total over 2,100 pages.

This proceeding then followed. In the petition, the NYCLU argues that at least some of the FOIL exemptions which the NYPD has invoked are inapplicable and that the Department has otherwise failed to provide the requisite "particularized and specific" justifications for not disclosing requested documents.

Discussion

It is well settled that government records, including police records, are presumptively open for public inspection and copying unless they fall within one of the exemptions of Public Officers Law § 87 (2). See Matter of Gould v. New York City Police Department, 89 NY2d 267, 274-275 (1996). In order to ensure that the public has maximum access to government documents, the "exemptions are to be narrowly construed, with the burden resting on the agency to demonstrate that the required material indeed qualifies for exemption." Matter of Hanig v. State of New York Dept. Of Motor Vehicles, 79 NY2d 106, 109 (1992). To invoke one of the exemptions contained in section 87(2), the NYPD must articulate "particularized and specific" justifications for not disclosing requested documents and, if appropriate and necessary to determine whether the withheld documents fall entirely within the scope of the asserted exceptions, the court may conduct an in camera inspection of representative documents and order the disclosure of all non-exempt material, appropriately redacted. See Matter of Gould v. New York City Police Department, 89 NY2d at 275.

Here, the court agrees with the petitioner that the FOIL exemptions invoked by the respondents under Public Officers Law §§ 87(2)(a) and 87(2)(i) are inapplicable. As to section 87(2)(a), the NYPD claims that disclosure is barred by three federal statutes, the Critical Infrastructures Protection Act of 2001, the Homeland Security Act and the Maritime Transportation Security Act. As to the Critical Infrastructures Protection Act, it bars disclosure of certain information submitted to a federal agency, but only if such submission was accompanied by an express statement that it was being voluntarily submitted in the expectation of protection from disclosure. See 42 USC § 133(a)(1)(A) and (2)(A). In this respect, the

respondents have not even suggested that any such statement was ever submitted to the DHS. As to the Homeland Security Act, the NYPD relies on a recent amendment which exempts from disclosure information which the DHS Secretary developed in the course of formulating regulations concerning the security of chemical facilities. See 6 USC § 121. This provision is clearly inapplicable since the NYPD has not suggested that LMSI was designed to protect any chemical facility or that any of the requested information was developed as part of the DHS regulatory process. Finally, as to the Maritime Transportation Security Act, it exempts the disclosure of information developed by the DHS Secretary while formulating a national maritime security plan. See 46 USC § 70103(d). This provision, too, is inapplicable since there is no indication that the LMSI has anything to do with the development of a national maritime security plan.

As to Public Officers Law § 87(2)(i), this provision is intended to exempt the disclosure of documents which would jeopardize the security of an agency's technology assets. As the petitioner points out, the exemption clearly applies only to documents which contain information that would assist the recipient in invading an agency's computer system. In this respect, although the NYPD states that the petitioner seeks access to information about the limits of LMSI's data capabilities, there is nothing in the petitioner's FOIL request which supports this assertion and, indeed, the petitioner has denied that it seeks any such technical information. In any event, the respondents have failed to identify the specific documents which are allegedly exempt from disclosure under this provision.

The court, however, disagrees with the petitioner's contention that Public Officers Law § 87(2)(e) is inapplicable herein. Clearly, the disclosure of detailed information about the nature of an anti-terrorist surveillance system employed by the NYPD will reveal criminal investigative techniques or procedures. Although the petitioner suggests that the use of surveillance cameras has become routine, there is nothing routine about the LMSI system, as outlined by the sources which the petitioner has cited. See *DeZimm v. Connelie*, 102 AD2d 668, 671 (3rd Dept 1984).

In any event, the petitioner has conceded that its request may well seek information which is exempt from disclosure. Its primary grievance is that the NYPD has failed to particularize its justification for denying disclosure as to each document in its possession which falls within the petitioner's FOIL request. An agency's particularization of its denial of a FOIL request serves the purpose of explaining why a specific document cannot be disclosed. In the absence of any description of a document which is being withheld from disclosure, neither the petitioner nor the court can be assured that the exemption is, in fact, applicable to a document which has been requested under FOIL. Where, however, the petitioner specifies that it seeks documents containing certain types of information and the information is, on its face, exempt from disclosure, an adequate explanation by the agency as to why the information is so exempt is sufficient. Moreover, it may well be that by having to particularize its reasons for withholding the production of a specific document, the agency may unavoidably provide the FOIL applicant with insight and information which should not otherwise be revealed. Under such circumstances, the agency may deny disclosure without discussing each of the documents which have been withheld. See *J.P. Stevens & Co. v. Perry*, 710 F2d 136, 143 (4th Cir 1983).

Here, the LMSI is a security system designed to detect and monitor possible terrorist activity in lower Manhattan. As already noted, the petitioner seeks information involving the operational details of the LMSI, such as the types of information to be collected and how the information will be used, shared and stored and for how long. In denying the petitioner's request, the NYPD Records Access Appeals Officer stated that disclosure of such details about the development of the system and how it works would limit its effectiveness and increase the risk of terrorist acts in lower Manhattan. In its opposition papers, the NYPD further explains that disclosure of this information, as well as the disclosure of any assessments which have been made about the LMSI or about a similar system used in London, would provide terrorists with insight into how the system works and how detection and surveillance by the LMSI may be avoided.

There is nothing in the petitioner's papers which provides any basis for the court to question the good faith and reasonableness of the respondents' judgment and evaluation of the danger posed by disclosing the specific information sought by the petitioner about the system's operational details, as well

as disclosing the assessments which have been made about the system. *See American-Arab Anti-Discrimination Committee v. US Dept of Homeland Security*, 516 F Supp2d 83, 89 (DDC 2007). *See also Center for National Security Studies v. US DOJ*, 331 F3d 918, 927 (DC Cir 2003). Although, as discussed earlier, the City has disclosed some information about the LMSI, the respondents have clearly determined that such limited disclosure does not compromise the integrity and efficacy of the system. By doing so, the respondents have hardly waived their right to determine what, if any, other information may be disclosed without undermining the operation of the LMSI.

The court is therefore persuaded that the respondents are exempt from disclosing to the petitioner documents which show or discuss the LMSI system's operational details, such as the types of information to be collected and how the information will be used, shared and stored and for how long. In addition, any documents which assess the LMSI or the Ring of Steel system in London are also exempt and need not be disclosed.

Nevertheless, the petitioner's FOIL request was not limited to documents showing the operational details and assessments of the LMSI system. Indeed, the petitioner specifically asked for documents relating to funds which the NYPD was reported to have received from the DHS and from the City for use in the system. In addition, in paragraphs 5 and 6, the petitioner sought documents sent to and received from entities such as vendors.

To the extent that the NYPD has identified documents and records which are responsive to the petitioner's FOIL request and contain information other than the information which the court has found herein to be exempt, they should be produced for in camera review by the court. Indeed, given its blanket withholding of documents, the NYPD has suggested, in its opposition papers, that it would welcome such in camera review of all withheld documents. Since the court has found that much of the information requested by the petitioner is exempt from disclosure, it anticipates that the documents which must be submitted for in camera review will comprise only a limited portion of the documents which have otherwise been identified by the NYPD as responsive to the petitioner's FOIL request.

Thus, the court concludes that the respondents should submit for in camera review all documents sought in paragraphs one through six of the petitioner's FOIL request which they have withheld from disclosure, other than those documents discussing the operational details of the LMSI system such as the types of information to be collected, how the information would be used, the extent to which the information will be shared with other law enforcement agencies or other entities, the form in which the information will be retained and how long the information will be retained before it is destroyed. To the extent that there are documents which discuss these exempt subjects but also discuss other aspects of the LMSI program, they should be submitted to the court with a redaction of the exempt subject matter. The documents so submitted to the court should be accompanied by an explanation as to the basis for the claimed exemption as to these other aspects of the LMSI program. Finally, the court notes that if the respondents intend to claim that any particular document is exempt from disclosure under Public Officers Law § 97(2)(g) as an inter-agency and intra-agency communication, they should so specify.

The respondents' in camera submission shall be made within 20 days of service upon them of copy of this order with notice of entry. The petitioner's request for attorney's fees shall be held in abeyance until the court completes its in camera review of the submitted documents, at which time a determination will be made as to whether the petitioner may be considered, under Public Officers Law § 89(4)(c), to have substantially prevailed in this proceeding.

ENTER ORDER

Dated: 6/26/09

MARYLIN G. DIAMOND, J.S.C.

Check one: [ ] FINAL DISPOSITION  [X] NON-FINAL DISPOSITION