**United States District Court**
**Southern District of New York**
_____

**NEW YORK CIVIL LIBERTIES UNION,**

                     **Plaintiff,**          09 Civ. 5325 (JGK)

      - against -                    <u>OPINION AND ORDER</u>

**DEPARTMENT OF HOMELAND SECURITY,**

                     **Defendant.**
_____

**JOHN G. KOELTL, District Judge:**

     The plaintiff, the New York Civil Liberties Union, filed a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking documents related to the Lower Manhattan Security Initiative ("LMSI"), an initiative of the New York City Police Department ("NYPD") for which NYPD received grant funding from the defendant, the Department of Homeland Security ("DHS").  The LMSI involves the placement of surveillance cameras in Lower Manhattan.  DHS and its component agencies have redacted certain documents sought by the plaintiff.  The plaintiff filed this action seeking to compel production by the defendant.

     At this stage of the litigation, after extensive production of documents by the Government and good-faith negotiations between the parties, only portions of 18 documents remain at issue.  The defendant claims that the information withheld in all but one of the redactions is exempt from disclosure under

1

FOIA exemption 7(E); it additionally claims that some of the information is exempt from disclosure under exemption 5.  The defendant has submitted declarations from various officials of the Federal Emergency Management Agency ("FEMA") and the National Protection and Programs Directorate ("NPPD") averring that the redacted material falls within the stated FOIA exemptions.  The defendant moves for partial summary judgment[1] regarding the plaintiff's request for the disclosure of the redacted material.

**I.**

An agency resisting a FOIA request "has the burden of proving the applicability of a FOIA exemption and . . . 'may meet its burden by submitting a detailed affidavit showing that the information logically falls within the claimed exemptions.'" Wilner v. Nat'l Sec. Agency, 592 F.3d 60, 72-73 (2d Cir. 2009) (quoting Minier v. CIA, 88 F.3d 796, 800 (9th Cir. 1996)). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed

---

[1] The defendant moves for partial, rather than full, summary judgment because FEMA is still searching for documents responsive to the plaintiff's request for documents concerning camera surveillance systems other than the LMSI. (Def.'s Mem. at 2 n.1.)  This order does not resolve any issues related to that portion of the plaintiff's request.

exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.  Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible."  Id. at 73 (quoting Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009)).

The redactions at issue contain 5 categories of information about the LMSI: (1) the location of cameras and license plate readers; (2) the particular types of equipment being used; (3) the timeline for implementing the LMSI, along with related goals, challenges, and milestones; (4) the number of assets (that is, buildings or other structure) protected by the LMSI; and (5) the particular assets to be protected, along with pertinent information about those assets.[2]  This information comes, variously, from funding requests by the NYPD, grant and project databases maintained by DHS, an initial implementation plan, spreadsheets listing the protected assets, research papers, a Power Point presentation, and emails and memos exchanged among DHS officials or between NYPD and DHS.

---

[2] The defendant initially withheld the total number of cameras and license plate readers used or planned for the LMSI.  After argument, however, the defendant withdrew its claim that this information was exempt from disclosure, and those redactions are no longer at issue in this case.  The Government has now produced portions of five documents that it was previously withholding to shield this information.  (Def.'s Ltr. of Mar. 3, 2011, at 1.)  Additionally, the plaintiff initially challenged the defendant's redaction of the number of license plate readers that were "fixed" as opposed to "mobile," but it abandoned its objections to that redaction after argument.  (Pl.'s Ltr. of Mar. 3, 2011, at 1 n.1.)

The defendant asserts that nearly all of the information it has withheld from the plaintiff was properly withheld under exemption 7(E).  Exemption 7(E) applies to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7).  The defendant claims that both prongs of exemption 7(E) apply: that disclosure would reveal "techniques and procedures for law enforcement investigations or prosecutions," and that disclosure would reveal "guidelines for law enforcement investigations or prosecutions" and could facilitate "circumvention of the law."

The plaintiff does not contest that the redacted material consists of "records or information compiled for law enforcement purposes," that it contains information about techniques, procedures, and guidelines for law enforcement investigations, or that the withheld information could be used to circumvent the law.  Nor does the plaintiff claim that the redactions or the justifications given by the declarants were made in bad faith.  Rather, the plaintiff argues that the information is already known — that a response to its FOIA requests would not increase

4

the risk of circumvention of the law because "there has been public reporting about the LMSI and other NYPD surveillance initiatives that discusses exactly the types of information DHS has withheld as 'operational details' or asset-related information."[3]  (Pl.'s Mem. at 16.)  Additionally, the plaintiff claims that the techniques used by the LMSI are "routine and generally known," because they have been the subject of various publications and because many of the cameras can be observed and located by pedestrians.  (Pl.'s Mem. at 19-20.)  See Lamont v. Dep't of Justice, 475 F. Supp. 761, 780 (2d Cir. 1979) ("Congress did not intend that Exemption 7(E) apply to 'routine techniques or procedures which are generally known outside the Government . . . .'" (quoting Atty. Gen.'s Mem. on the 1974

---

[3] The defendant initially argued that "the mere presence of . . . information in the public domain is insufficient" and that "[a] waiver only exists if the plaintiff points to an 'official' public disclosure, or a disclosure made by an authorized representative of the agency from which the information is sought" that is "as specific as the information previously released." (Def.'s Reply Mem. at 3, quoting Fitzgibbon v. CIA, 911 F.2d 755, 765 (D.C. Cir. 1990), Wilson v. McConnell, 501 F. Supp. 2d 545, 556 (S.D.N.Y. 2007), and Frugone v. CIA, 169 F.3d 772, 774 (D.C. Cir. 1999)).  For this proposition, the defendant relied exclusively on cases applying FOIA exemptions 1 and 3.  After the defendant's post-argument disclosures, it asserted that it is now unnecessary to determine whether "official acknowledgment" is required for public information to vitiate an otherwise valid withholding under exemption 7(E), or whether public disclosure from another source is sufficient, because in either case, the information in the public domain must be "identical."  Inner City Press/Community on the Move v. Bd. of Governors of Fed. Reserve Sys., 463 F.3d 239, 244 (2d Cir. 2006); see also Unidad Latina En Accion v. U.S. Dep't of Homeland Sec., 253 F.R.D. 44, 53 (D. Conn. 2008) (noting that, "[a]lthough Inner City Press dealt with a challenge to the Government's withholding of documents pursuant to Exemption (b)(4), the Second Circuit's discussion of the public domain exception applies to other exemptions," including exemption 7).  Accordingly, the Court will assume that identical information that entered the public domain without an "official" disclosure could require FOIA disclosure despite an otherwise valid claim that exemption 7 applies.

Amendments to the Freedom of Information Act (1975) at 522));
accord Unidad Latina En Accion, 253 F.R.D. at 52.

    The plaintiff bears the burden of showing that information is publicly available.  Inner City Press, 463 F.3d at 245.  The plaintiff has not met this burden because the publicly available information it has proffered is not "identical" to the information it seeks to obtain.  Id. at 244; Unidad Latina En Accion, 253 F.R.D. at 53.  The information withheld, as described by the defendant's declarants, is far more specific than any information that the plaintiff has shown to be publicly available.  The location of license plate readers and cameras is the plainest example: although it is publicly known that the LMSI uses cameras and license plate readers, the specific locations of those devices are unknown, and their disclosure could unquestionably aid criminals in evading detection and thereby circumventing the law.  Although private citizens may be able to identify the locations of some individual cameras by careful observation, the plaintiff has provided no reason to think that all or even a substantial portion of the cameras can be identified in this manner.  Even if the location some cameras might be publicly knowable, the uncertainty concerning the other cameras is plausibly asserted to be a key component of their deterrent and disruptive effect.  Cf. Maguire v. Mawn, No. 02 Civ. 2164, 2004 WL 1124673, at *3 (S.D.N.Y. May 19, 2004)

("Although the public may know that banks often employ bait money, the public does not know whether and how a specific bank employs bait money. . . . [C]onsidering that bait money is meant to be used clandestinely, the more information a potential robber may have on its use at a bank, the better they can plan and execute a robbery."); Coastal Delivery Corp. v. U.S. Customs Serv., 272 F. Supp. 2d 958, 964 (C.D. Cal. 2003) (holding that exemption 7(E) was properly invoked where a smuggler could use "the rate of examinations . . . to direct his merchandise to vulnerable ports," notwithstanding the public knowledge that examinations sometimes took place).

Similarly, although the mechanics of cameras and license plate readers are "generally known," the specific types of devices used by the LMSI, their capabilities, and their means of transmitting data are all unknown. Potential criminals can only guess at what devices are in use and how to circumvent them. Disclosure of the specific devices, the defendant's declarants plausibly assert, could identify limitations and vulnerabilities that could be exploited by the unscrupulous. See Piper v. U.S. Dep't of Justice, 294 F. Supp. 2d 16, 31 (D.D.C. 2003), aff'd as amended, 222 Fed. App'x 1 (D.C. Cir. 2007) (unpublished per curiam) ("[R]evealing the identity of the electronic device and its application would allow criminal types to evade the technique. . . . General, non-specific knowledge that the FBI

7

possesses capabilities to electronically monitor the movement of automobiles, for example, or other moving objects is not the same as identifying the actual device, its function, and its capabilities.").

The defendant's declarations similarly support withholding the number and identity of assets protected by the LMSI, along with the details that DHS and the NYPD find salient about each and the goals and challenges of implementation.  While the public may be able to guess at some of the specific buildings or infrastructure components that are of interest to DHS, the plaintiff has not identified any actual public disclosure of this information.  Instead, it has cited three news stories that discuss particular assets protected at times by other NYPD initiatives.  (See Pl.'s Mem. at 8 & nn. 28-30; June 25, 2010 Decl. of Matthew Faiella ("Faiella Decl.") Ex. M, P, Q.)  None of these stories speak to DHS's concerns or the guidelines that it uses in funding the LMSI.  The plaintiffs have therefore presented no evidence that could vitiate the declarants' plausible claims that "release of the number and name of assets would publicize with heightened preciseness the scope and breadth of the LMSI, and would identify to potential terrorists targets that have heightened security due to their significance.  Disclosure of this information could also nullify the deterrent effect created by the absence of information concerning the

8

scope of the surveillance and other security measures within lower Manhattan." (May 26, 2010 Decl. of Elizabeth Gary ("First Gary Decl.") at ¶ 33.) See Maguire, 2004 WL 1124673, at *3; Coastal Delivery, 272 F. Supp. 2d at 964; see also Unidad Latina En Accion, 253 F.R.D. at 53 (collecting cases).

Accordingly, the defendant's motion for summary judgment is granted as to all redactions justified under exemption 7(E).

## II.

If an agency cites multiple exemptions in withholding information, a court may uphold its redactions "under one exemption without considering the applicability of the other." Wilner, 592 F.3d at 72 (quoting Larson, 565 F.3d at 862-63). There is therefore no need to consider the parties' arguments regarding exemption 5 as it applies to the information just discussed.[4]  There is, however, one document that contains redactions that the defendant withheld only under exemption 5, an intra-agency memorandum drafted by a division of the NPPD requesting FEMA's approval of an extension of time to complete certain steps of the grant funding process. (See Faiella Decl. Ex. NN.)

---

[4] The Government originally justified some redactions under the so-called "High 2" variant of exemption 2. The Supreme Court recently rejected the "High 2" line of cases. See Milner v. Dep't of Navy, No. 09-1163, 2011 WL 767699 (2011). The Government therefore withdrew its reliance on exemption 2. Because all withholdings defended under exemption 2 were proper under exemption 7, the Government's change in position does not affect this case.

Exemption 5 covers "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  To qualify for this "deliberative process privilege, a document must be both 'predecisional' and 'deliberative.'"  Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999).  The plaintiff does not contend that the memorandum is not deliberative, but only that it is not predecisional because the defendant did not "point to a policy-making function that was implicated by the memorandum requesting the extension."  (Pl.'s Mem. 23.)

A document is predecisional when it is "prepared in order to assist an agency decisionmaker in arriving at his decision."  Grand Cent. P'ship, 166 F.3d at 482 (internal quotation marks omitted).  The privilege protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."  Id. (quoting Ethyl Corp. v. EPA, 25 F.3d 1241, 1248 (4th Cir. 1994)).  "[T]he privilege does not protect a document which is merely peripheral to actual policy formation; the record must bear on the formulation or exercise of policy-oriented judgment."  Id. (quoting Ethyl Corp., 25 F.3d at 1248).

10

The plaintiff argues that an agency must "pinpoint the specific agency decision to which the document correlates . . . and . . . verify that the document precedes, in temporal sequence, the 'decision' to which it relates" to invoke exemption 5.  Id. (quoting Providence Journal Co. v. U.S. Dep't of the Army, 981 F.2d 552, 557 (1st Cir. 1999)).  The Supreme Court, however, has stated clearly that exemption 5 does not turn on "the ability of an agency to identify a specific decision in connection with which a memorandum is prepared" because "[a]gencies are, and properly should be, engaged in a continuing process of examining their policies . . . and the lower courts should be wary of interfering with this process." N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 151 n.18 (1975). Although an agency can show that a document is predecisional by pinpointing a specific decision, such a showing is not a prerequisite to application of exemption 5.

Even under the plaintiff's interpretation of the caselaw, however, the defendant has carried its burden of showing that the memorandum is predecisional.  The memorandum was written by an employee of NPPD to request approval from FEMA for an extension of time to submit documents related to the LMSI. (July 8, 2010 Decl. of Judy Hampton ("Hampton Decl.") at ¶¶ 4-5.)  FEMA considered the memorandum to decide whether an extension would be appropriate in light of statutory limitations

11

on grant funding. (Id. at ¶¶ 6-7.) The document was thus "prepared in order to assist an agency decisionmaker in arriving at his decision" and "bear[s] on the formulation or exercise of policy-oriented judgment." Grand Cent. P'ship, 166 F.3d at 482 (internal quotation marks omitted).

The plaintiff argues in the alternative that factual material within the memorandum should be "segregated and disclosed." (Pl.'s Mem. at 25.) The material it seeks to obtain, however, contains the same information that has already been held exempt from disclosure, such as the location and names of LMSI assets. (Id.) There is therefore no need to consider whether this information could be segregated from the remainder of the memorandum, because it is independently exempt.

## III.

Alternatively, the plaintiff argues that the Court should order production of the unredacted documents for in camera inspection. The Court ordered production of three documents, Exhibits CC, DD, and EE, which contained the number of cameras and license plate readers, prior to the Government's withdrawal of its claims regarding that information. As to all other documents, no "questions remain after the relevant issues have been identified by the agency's public affidavits and have been

tested by the plaintiffs," and therefore in camera review is inappropriate. Wilner, 592 F.3d at 75-76.

## CONCLUSION

For the foregoing reasons, the defendant's motion for partial summary judgment is **granted**. The Clerk is directed to close Docket No. 14.

**SO ORDERED.**

Dated:   New York, New York
         March 9 , 2011

John G. Koeltl
United States District Judge